UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY GOGLIARDO,

     Plaintiff,

                                   Case No.:

v.

PARKSIDE SOUTH PROPERTY
OWNERS ASSOCIATION, INC.;
DANIEL PETER; JOHN McNEIL;
and JOHN PEAVY,

     Defendants.

_____/

## COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, TRACY GOGLIARDO, by and through her undersigned attorney, and files this Complaint against the Defendants, PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC., DANIEL PETER; JOHN McNEIL and JOHN PEAVY and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331, 42 U.S.C. §3613, because this lawsuit is brought under and pursuant to the Federal Fair Housing Act, 42 U.S.C. §3601 et seq..

2.     Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. §1391(b) because these claims arose in this judicial district and Defendants are all parties who reside in this judicial district.

3.      Plaintiff, TRACY GOGLIARDO (hereinafter "GOGLIARDO"), is a natural person, a Polk County resident, and a citizen of the State of Florida. GOGLIARDO resides at 4941 Tradition Drive, Lakeland, Florida 33812 which is within the Parkside South community.

4.      The Parkside South community is governed and operated by the Defendant, PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC..

5.      Defendant, PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC. (hereinafter "PARKSIDE"), is a Florida Not For Profit Corporation organized and operating pursuant to Chapter 720, Florida Statutes; with its principal address in Polk County at 4974 Tradition Drive, Lakeland, Florida 33812.

6.      PARKSIDE is responsible for governing and administering its housing association pursuant to Chapter 720 of the Florida Statutes, its Declaration, Articles of Incorporation, Bylaws, and its Rules and Regulations.

7.      PARKSIDE is operated by a Board of Directors, including Defendant, DANIEL PETER, whose address is 4938 Tradition Drive, Lakeland, Florida 33812. At all times material hereto DANIEL PETER was and is a member of PARKSIDE's Board of Directors, and was personally involved in at least one discriminatory act set forth herein. As such, each reference to PARKSIDE shall also include Defendant, DANIEL PETER, unless expressly stated otherwise.

8.      PARKSIDE is operated by a Board of Directors, including Defendant, JOHN McNEIL, whose address is 4935 Tradition Drive, Lakeland, Florida 33812. At all times material hereto JOHN McNEIL was and is a member of PARKSIDE's Board of Directors, and was personally involved in at least one discriminatory act set forth herein. As such, each reference to PARKSIDE shall also include Defendant, JOHN McNEIL, unless expressly stated otherwise.

9. PARKSIDE is operated by a Board of Directors, including Defendant, JOHN PEAVY, whose address is 4974 Tradition Drive, Lakeland, Florida 33812. At all times material hereto JOHN PEAVY was and is a member of PARKSIDE's Board of Directors, and was personally involved in at least one discriminatory act set forth herein. As such, each reference to PARKSIDE shall also include Defendant, JOHN PEAVY, unless expressly stated otherwise.

## GENERAL ALLEGATIONS

10. The housing units within PARKSIDE are "dwelling[s]" within the meaning of 42 U.S.C. §3602(b), FHA and as such, are subject to the anti-discrimination provisions of the FHA.

11. As further explained below, GOGLIARDO suffers from a disability which substantially limits one or more major life activities, and therefore she has a "handicap" pursuant to 42 U.S.C. §3602(h), FHA.

12. GOGLIARDO is a colon cancer survivor but has suffered complications from her surgery one of which is incontinence.

13. GOGLIARDO has been deemed by a treating physician to be "totally or permanently disabled" and PARKSIDE has full knowledge of this determination.

14. GOGLIARDO has made requests for reasonable accommodations to allow her an equal opportunity to use and enjoy her dwelling.

15. GOGLIARDO stated in a written request to PARKSIDE dated February 11, 2024 that the "upcoming meeting 2/24/2024 being held outdoors on the road is not handicap accessible as a result of physical limitations and conditions described above. When the HOA conducts meetings (member or open board), she requested in 2021, and 2022 for a facility with a functioning restroom

so that she may attend. The request was renewed in 2023. A copy of the written request dated February 11, 2024 is attached hereto as Exhibit "A" and is incorporated herein by this reference.

16.     In addition to requests for accommodation made by GOGLIARDO personally to PARKSIDE, GOGLIARDO has made requests for accommodation through her legal counsel for access to restroom facilities during meetings of the Association and to permit her to park a vehicle equipped with a full bathroom on Plaintiff's property within the community. Copies of these written requests dated March 15, 2024 and May 17, 2024 are attached hereto as Exhibits "B" and "C" respectively.

17.     GOGLIARDO has sufficiently disclosed her handicap and/or disability-related need for a readily accessible bathroom with running water and for a vehicle equipped with a full bathroom and PARKSIDE has never requested any further documentation or substantiation for her disability nor her stated needs.

18.     It was incumbent on PARKSIDE to request further information or open a dialogue with GOGLIARDO if there was any question as to whether or not GOGLIARDO suffered from a disability and whether or not the accommodation was necessary or how PARKSIDE could reasonably accommodate the need; however, PARKSIDE never requested any further information from GOGLIARDO or her legal counsel.

19.     Instead, PARKSIDE proceeded with making a unilateral decision that a portable toilet with no running water would suffice as a reasonable accommodation for GOGLIARDO's requested accommodation to allow her to attend meetings of the Board of Directors and/or membership. Photos of the "Porta-John Accommodation" provided by the Association is attached hereto as Exhibit "D".

20.     PARKSIDE's response smacks of being dismissive, insensitive, mocking, insulting, and fomenting contempt and ridicule of GOGLIARDO and completely disregards the nature of her disability and her gender.

21.     PARKSIDE never responded to the request for an accommodation to allow for the parking of a van or similar vehicle equipped with a full bathroom on GOGLIARDO's property as an accommodation to the parking restrictions set forth in Section 3 of the Declaration. A copy of the relevant portion of the Declaration is attached hereto as Exhibit "E" and incorporated herein by this reference.

22.     The failure to respond to a request for an accommodation in a timely manner is the equivalent of a denial of the requested accommodation.

23.     Months after the initial request for accommodation was sent, GOGLIARDO's husband traded his personal vehicle for a van equipped with a full bathroom to accommodate GOGLIARDO's disability. A picture of the van is attached hereto as Exhibit "F" and is incorporated herein by this reference.

24.     As opposed to providing any response to GOGLIARDO's request for an accommodation, PARKSIDE proceeded to send a violation notice to GOGLIARDO after her husband began parking the van in front of their property within the community. A copy of the violation notice dated August 6, 2024 is attached hereto as Exhibit "G" and is incorporated herein by this reference.

25.     The violation notice threatened fines if the vehicle was not removed from in front of GOGLIARDO's property by August 20, 2024.

26.    Not once has PARKSIDE reached out to GOGLIARDO to discuss her needs for an accommodation and instead, JOHN PEAVY shared GOGLIARDO's request for an accommodation for access to a restroom at meetings with his wife, who is not a member of the Board of Directors, who then proceeded to post it on a social media platform and subject GOGLIARDO to ridicule.  A copy of the posting is attached hereto as Exhibit "H" and is incorporated herein by this reference.

27.    Plaintiff has been injured by PARKSIDE's discriminatory housing practices and therefore qualifies as an "aggrieved person" pursuant to 42 U.S.C. §3602(I), FHA.

28.    Plaintiff has retained the undersigned counsel to represent her in this action and has agreed to pay them a reasonable fee for their services.

**COUNT I**
**FAILURE TO REASONABLY ACCOMMODATE AT MEETINGS**

29.    GOGLIARDO realleges and incorporates the allegations set forth in paragraphs 1 through 28 as if fully set forth herein.

30.    GOGLIARDO has a right to attend open board meetings and membership meetings pursuant to Fla. Stat. §§ 720.303(2) and 720.306(6) respectively.

31.    Fla.Stat. §720.303(2)(a) provides "[a] meeting of the board must be held at a location that is accessible to a physically handicapped person if requested by a physically handicapped person who has a right to attend the meeting."

32.    F.S. §720.306(1)(a) provides "[a] meeting of the members must be held at a location that is accessible to a physically handicapped person if requested by a physically handicapped person who has a right to attend the meeting."

33.     GOGLIARDO has a disability-related need to have ready and quick access to a bathroom with running water to allow for her to use the restroom at a moment's notice and to be able to wash her hands after using the toilet in the interests of being sanitary.

34.     In order to have equal use and enjoyment of her home, GOGLIARDO is entitled by statute to attend meetings of the Board of Directors and membership, as this is part and parcel of her ownership interest in the home.

35.     On or about February 11, 2024, GOGLIARDO renewed her request for an accommodation to have open meetings of the Board and/or membership meetings held at a facility with a functioning restroom noting that 2023 meetings were an issue.

36.     Meetings in 2023 were held outdoors in the streets despite requests by GOGLIARDO that meetings be held at a facility with an accessible and fully functioning bathroom.

37.     PARKSIDE had actual knowledge of the request for an accommodation and GOGLIARDO's disability.

38.     If there was any question as to the legitimacy of GOGLIARDO's handicap status or the disability-related need for the accommodation, PARKSIDE should have inquired further of GOGLIARDO but it did not.

39.     PARKSIDE's response to the requested accommodation was to hold the meeting of February 24, 2024 in a cul-de-sac and have a portable toilet labeled "Doodie calls" brought in which had no sink or running water whatsoever.

40.     PARKSIDE's response to GOGLIARDO's reasonable request for an accommodation was wholly inadequate and exposed GOGLIARDO to ridicule and shame and caused a loss of dignity.

41.     To make matters worse, GOGLIARDO's request for an accommodation, which was submitted privately to the Board of Directors, was published on a social media application with a comment from Defendant, JOHN PEAVY's, spouse, Rachel Peavy, that "We have our HOA meetings in the cul de sac lol well played John." A copy of the posting is attached hereto as Exhibit "H" and is incorporated herein by this reference.

42.     PARKSIDE has yet to provide the requested reasonable accommodation by holding its meetings at a facility with a readily accessible restroom with a sink and running water and has effectively denied the request for an accommodation.

43.     PARKSIDE's failure to modify its policies and procedures to accommodate GOGLIARDO's disability is discriminatory and unlawful.

44.     The actions of PARKSIDE were in total and reckless disregard of GOGLIARDO's rights and were indifferent to the disability related needs of the Plaintiff.

45.     Defendant, PARKSIDE, through its conduct and acts described above, violated 42 U.S.C. §3604(f)(2), FHA, by discriminating on the basis of handicap in the terms, conditions or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling.

46.     Defendant, PARKSIDE, through its conduct and acts described above, violated 42 U.S.C. §3604(f)(3)(B), FHA, by refusing to make reasonable accommodation in its rules, policies, practices, or services, when such accommodation is necessary to afford GOGLIARDO an equal opportunity to use and enjoy her dwelling.

47.     Holding meetings of the Board of Directors or membership of PARKSIDE at a location equipped with a full bathroom with running water would not: (1) result in substantial

physical damage to the property of others or that of PARKSIDE; (2) pose an undue financial or administrative burden to PARKSIDE; or (3) fundamentally alter the nature of PARKSIDE's operations.

48.     Legal counsel for GOGLIARDO expressly pointed out in his letter of May 17, 2024 as follows: "Let me suggest to you and your client how they could conduct their meetings at any of the City of Lakeland fire departments which all have meeting rooms which are accessible to the general public. In fact, sheriff's offices/auxiliary offices also have meeting rooms that are available to citizens of Lakeland at no charge. Finally, your client could also conduct their meetings at local churches which typically charge either nominal fees or no fees at all for use of their facilities."

49.     As a direct and proximate result of PARKSIDE's refusal to accommodate GOGLIARDO's needs, GOGLIARDO suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, contempt of neighbors, and loss of her right to equal housing opportunities regardless of her disability.

50.     The discriminatory conduct or actions of PARKSIDE was intentional, willful, and taken in total disregard for the rights of GOGLIARDO.

WHEREFORE, Plaintiff, TRACY GOGLIARDO, demands judgment against Defendants, PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC., DANIEL PETER, JOHN McNEIL and JOHN PEAVY, to declare that the actions of Defendants violated the Fair Housing Act by discriminating against a person with a disability, and to award Plaintiff compensatory and punitive damages, attorney's fees and costs, and such other relief as this Court deems just and equitable.

<u>COUNT II</u>
<u>FAILURE TO REASONABLY ACCOMMODATE FOR PARKING OF VAN</u>

51.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 28 as if fully set forth herein.

52.     GOGLIARDO needs a vehicle with a full bathroom to accommodate her disability and allow her to more fully function on a day-to-day basis by doing things such as grocery shopping or going to the doctor and in order to have equal use and enjoyment of her dwelling.

53.     GOGLIARDO made a request for an accommodation to allow her to maintain a vehicle with a full bathroom on her property.

54.     PARKSIDE did not respond to the request for accommodation.

55.     PARKSIDE effectively denied GOGLIARDO's request for an accommodation through its silence and lack of response and by then ultimately sending a violation notice regarding the van to GOGLIARDO.

56.     PARKSIDE has yet to provide the requested reasonable accommodation by affirmatively stating that GOGLIARDO may maintain the van on her property and out of fear of actions being taken against her including, but not limited to, the imposition of fines, GOGLIARDO and her husband returned the vehicle at a significant financial loss.

57.     PARKSIDE's failure to make a reasonable accommodation to its rules to accommodate GOGLIARDO's disability is discriminatory and unlawful.

58.     The actions of PARKSIDE were in total and reckless disregard of GOGLIARDO's rights and were indifferent to the disability related needs of the Plaintiff.

59.     Defendant, PARKSIDE, through its conduct and acts described above, violated 42 U.S.C. §3604(f)(2), FHA, by discriminating on the basis of handicap in the terms, conditions or

privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling.

60.     Defendant, PARKSIDE, through its conduct and acts described above, violated 42 U.S.C. §3604(f)(3)(B), FHA, by refusing to make reasonable accommodation in its rules, policies, practices, or services, when such accommodation is necessary to afford GOGLIARDO an equal opportunity to use and enjoy her dwelling.

61.     Allowing GOGLIARDO to maintain a van with a self-contained full bathroom on her property would not: (1) result in substantial physical damage to the property of others or that of PARKSIDE; (2) pose an undue financial or administrative burden to PARKSIDE; or (3) fundamentally alter the nature of PARKSIDE's operations.

62.     As a direct and proximate result of PARKSIDE's refusal to accommodate GOGLIARDO's needs, GOGLIARDO suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, contempt of neighbors, loss of transportation and loss of her right to equal housing opportunities regardless of her disability.

63.     The discriminatory conduct or actions of PARKSIDE was intentional, willful, and taken in total disregard for the rights of GOGLIARDO.

WHEREFORE, Plaintiff, TRACY GOGLIARDO, demands judgment against Defendants, PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC., DANIEL PETER, JOHN McNEIL, and JOHN PEAVY, to declare that the actions of Defendants violated the Fair Housing Act by discriminating against a person with a disability, and to award Plaintiff compensatory and punitive damages, attorney's fees and costs, and such other relief as this Court deems just and equitable.

**COUNT III**
**INTERFERENCE AND INTIMIDATION**

64.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 28 as if fully set forth herein.

65.     It is believed that the animosity towards GOGLIARDO began in 2020 when concerns were raised by GOGLIARDO surrounding COVID and activities within the Parkside South community being conducted by DANIEL PETER that were not observing mandated lockdowns.

66.     GOGLIARDO and her husband were concerned for her health and GOGLIARDO's husband inquired of DANIEL PETER about quarantining and why non-essential work was being performed and was essentially told to mind his own business.

67.     The ire towards GOGLIARDO has only escalated since she has asked for accommodations to attend meetings.

68.     At the meeting of February 4, 2023, JOHN McNEIL's wife proceeded to shout at GOGLIARDO and call her a "bitch" when GOGLIARDO tried to speak at the meeting which she has a right by statute to speak at on agenda items. No one on the Board of Directors attempted to intercede or protect GOGLIARDO's right to speak.

69.     On or about December 13, 2023, when leaving her home, GOGLIARDO was again called a "bitch" and told she was ruining someone's life by JOHN McNEIL's spouse. JOHN McNEIL was present during his wife's yelling at GOGLIARDO and he made no attempt to intercede.

70.     JOHN McNEIL has reported GOGLIARDO to code enforcement for alleged violations by having work done without a permit.

71.     JOHN PEAVY's wife has posted about GOGLIARDO on social media in a derisive and mocking manner subjecting GOGLIARDO to ridicule.  A copy of the posting is attached hereto as Exhibit "H" and is incorporated herein by this reference.

72.     The posting published GOGLIARDO's request for an accommodation which was submitted privately to the Board of Directors.

73.     Publishing a request for accommodation is intended to have a chilling effect and dissuade accommodation requests from being made and specifically, interfered with GOGLIARDO wanting to exercise her right to request an accommodation.

74.     JOHN PEAVY has discussed GOGLIARDO in public in a derisive, condescending, and demeaning manner.

75.     On or about September 5, 2024, JOHN PEAVY was overheard by GOGLIARDO at the local Winn Dixie shopping center located at 2900 Lakeland Highlands Rd, Lakeland, FL 33803 saying: "We have this lady named Tracy who we all want to leave, ya know, move.  Maybe just die. Everyone on our street gets along.  Just hate her."

76.     When confronted by GOGLIARDO and asked not to speak about her in public, JOHN PEAVY responded "This is my Karen.  Cunt Karen."  A copy of an email that GOGLIARDO wrote the day of this event recounting the event is attached hereto as Exhibit "I" and is incorporated herein by this reference.

77.     DAN PETER, a/k/a DANIEL PETER, sent a violation notice to GOGLIARDO despite her request for an accommodation and PARKSIDE's failure to engage in any meaningful discussion or interactive process regarding her request for an accommodation to allow for the maintenance of a van with a self-contained full restroom on her property.

78.     The violation notice threatens that appropriate action will be taken which will include but not be limited to fines.  A copy of the August 6, 2024 violation notice is attached hereto as Exhibit "G" and is incorporated herein by this reference.

79.     As a result of the violation notice and threats of further enforcement actions including fines, GOGLIARDO got rid of the van and no longer has access to the van depriving her of adequate transportation to and from the grocery store, doctor appointments, etc..

80.     PARKSIDE and each of the individual directors in their various actions, through their conduct or condoning of behavior of others, violated 42 U.S.C. §3617, FHA, by coercing, intimidating, threatening, or interfering with Plaintiff in her exercise and enjoyment of her fair housing rights granted under the FHA.

81.     42 U.S.C. §3617 has been broadly interpreted to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws.

82.     As a result of the conduct of PARKSIDE and the individual directors, GOGLIARDO has suffered damages.

83.     The discriminatory conduct or actions of PARKSIDE were intentional, willful, and taken in total disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff, TRACY GOGLIARDO, demands judgment against Defendants, PARKSIDE PROPERTY OWNERS ASSOCIATION, INC., DANIEL PETER, JOHN McNEIL AND JOHN PEAVY to declare that the actions of Defendants violated the Fair Housing Act by discriminating against a person with a disability, and to award Plaintiff compensatory and punitive damages, attorney's fees and costs, and such other relief as this Court deems just and equitable.

Respectfully Submitted,


*/S/ Daniel F. Pilka* _____

PILKA, ADAMS & REED, P.A.
Daniel F. Pilka
Florida Bar No. 442021
330 Pauls Drive, Suite 100
Brandon, Florida 33511
Tel: (813) 653-3800 • (863) 687-0780
Fax: (813) 651-0710
Attorneys for Plaintiff
Email: dpilka@pilka.com
         eservice@pilka.com

**Exhibits "A" through "H"**
DFP/tag/244050

# EXHIBIT "A"

**TO:**
Parkside South Property Owners Association
**FROM:**
Tracy Gogliardo
**DATE:**
2/11/2024

**COMPLAINT:**

**REQUEST MEETINGS TO BE ACCESSIBLE TO HANDICAPPED PERSONS**

This is the third formal request.

The upcoming meeting 2/24/2024 being held outdoors on the road is not handicap accessible.

When the HOA conducts meetings (member or open board), I have requested in 2021, and 2022 for a facility with a functioning restroom so that I may attend.
2023 was an issue.

Kindest Regards,

Tracy Gogliardo
4941 Trad
Lakeland,

# EXHIBIT "B"

# PILKA ADAMS & REED, P.A.

## ATTORNEYS AT LAW

JAMES M. ADAMS
TIFFANY A. GRANT
DANIEL F. PILKA†
J. SCOTT REED

————————

†CERTIFIED CIRCUIT CIVIL MEDIATOR

**PLEASE REPLY TO: BRANDON ADDRESS**
TELEPHONE (813) 653-3800
TELEPHONE (863) 687-0780
FACSIMILE (813) 651-0710
Website: http://www.pilka.com

RICHARD R. KOSAN
CHRISTINE TRAKAS THORNHILL

————————

*OF COUNSEL*

**Email for Daniel F. Pilka**
dpilka@pilka.com

March 15, 2024

***Via Email Only: general@attorneynpm.com***
Nicholas P. Merriweather, Esquire
6000 S. Florida Avenue, #7592
Lakeland, FL 33813

Re:  Parkside South Property Owners Association, Inc.
     Our Client    :    Tracy and Patrick Gogliardo
     Our File No.  :    244050.00

Dear Mr. Merriweather:

This letter is to inform you that I have the privilege of representing Tracy Gogliardo and her husband, Patrick, as it relates to the recent events which have occurred at the Parkside South Property Owners Association, and how the Board and residents have been responding to my client's request for accommodations.

As I am sure you are aware, Ms. Gogliardo is a cancer survivor. However, like many cancer patients, complications arose from the cancer and the treatment she received for the cancer which have physically had a significant impact on her life and her ability to carry out her day-to-day functions. In particular, because of the nature of Ms. Gogliardo's cancer and treatment, she must at all times have a restroom readily accessible to her so that she can carry on with the day-to-day acts of daily living such as attending meetings and even driving a motor vehicle.

As a result, she previously submitted a request to the Board of Directors for an accommodation for the Association to conduct its annual meeting at a facility which contained restroom facilities.

I am sure you can appreciate that in addressing sensitive issues such as a person's physical disabilities, it is paramount that the Association's Board of Directors who consider such requests for

Nicholas P. Merriweather, Esquire
March 15, 2024
Page 2

_____

accommodations maintain the utmost secrecy and confidentiality of the information that is conveyed and the request made by the homeowners.

As a result, when my client submitted her request for an accommodation that the annual meeting be relocated to a facility that has functioning bathrooms, she never expected that the Association would respond to her request by keeping the meeting outdoors, but just instead producing a port-a-john at the meeting site for her to use if necessary. There are multiple problems with this response to the accommodation. First off, it was well known to everyone at the meeting that the reason the port-a-john was produced was because of my client's request for an accommodation. In other words, the degree of secrecy and confidentiality the Association is to exercise in responding to my client's request was non-existent. Second, in the event my client was forced to use the port-a-john, everyone attending the meeting would be aware of the fact and would know that she was in the port-a-john while the meeting was being conducted.

In addition to this, my client was subjected to ridicule and insults by many members of the community, including the spouses of several officers who questioned her need for the accommodation where she was able to walk to the meeting from her home and did not "appear" to be disabled.

Finally, as you can see by reviewing the photographs of the port-a-john, while a toilet was located in the corner of the facility, there was no washing facilities or sinks present by which my client could clean her hands after using the facility. In fact, I do not even believe there was toilet paper present.

As a result, one can only assume that it was your client's intention to humiliate and place my client in a bad light in response to her request for an accommodation in the manner in which it did. Accordingly, because of my client's disability, pursuant to Florida law, request is hereby made that all future Board of Directors meetings and membership meetings be conducted at facilities which have a functional and operating bathroom so that my client will not be singled out or subjected to further insults and humiliation.

In the meantime, as I am sure you can appreciate, the stress and anxiety my client was forced to face as a result of your client's conduct in subjecting my client to public insult, ridicule and harassment by its Board of Directors and members of the community has resulted in severe aggravation and irritation to her preexisting conditions resulting in exacerbation of her pain and discomfort, and the need for additional medical treatment and care. As a result, please accept this as my client's demand for a written apology from the Association and its Board of Directors expressly apologizing for placing my client in a position where she was harassed, insulted, and forced to face

Nicholas P. Merriweather, Esquire
March 15, 2024
Page 3

_____

public scorn and hatred because of the Association's failure to properly acknowledge and handle my client's reasonable request for an accommodation.  This apology must not only be written, but it must also be disseminated to the entire community so that everyone realizes that nobody, including my client, who suffers from a disability, should be subjected to scorn, insults and ridicule to individuals that she is supposed to call her neighbors.  Should such a letter not be presented within ten (10) days of the date of this letter, then I have already been authorized to proceed forward with filing a lawsuit against the Board of Directors and the individual Board members for reckless infliction of emotional distress and intentional infliction of emotional distress.  As such, I would urge the Board of Directors to act diligently and promptly in responding to my client's demand.

Finally, on behalf of my client, Tracy Gogliardo, please accept this as her written request for an accommodation to allow her to maintain on her property either a large van or other type of vehicle that has a self-contained bathroom so that if the situation requires, she will be able to stop and use the facility without delay or humiliation.  Granting of this accommodation to relieve her of the parking restrictions under the Association's governing documents is reasonable and necessary.  As such, I would urge the Association to immediately grant her request for accommodation in writing.

As such, after you have had the opportunity to review this letter, it would be greatly appreciated if you would please contact me so that we can discuss this matter in greater detail.

Your attention and consideration to this letter are appreciated.

Sincerely yours,

Daniel F. Pilka

DFP/mw
Enclosures
cc:      Client

# EXHIBIT "C"

# PILKA ADAMS & REED, P.A.

## ATTORNEYS AT LAW

JAMES M. ADAMS
TIFFANY A. GRANT
DANIEL F. PILKA†
J. SCOTT REED

———————

†CERTIFIED CIRCUIT CIVIL MEDIATOR

**PLEASE REPLY TO: BRANDON ADDRESS**
**TELEPHONE (813) 653-3800**
TELEPHONE (863) 687-0780
FACSIMILE (813) 651-0710
Website: http://www.pilka.com

RICHARD R. KOSAN
CHRISTINE TRAKAS THORNHILL

———————

*OF COUNSEL*

**Email for Daniel F. Pilka**
dpilka@pilka.com

May 17, 2024

***Via Email Only:*** *general@attorneynpm.com*
Mr. Nicholas P. Merriweather, Esquire
6000 S. Florida Avenue, #7592
Lakeland, FL 33813

> Re:    Parkside South Property Owners Association, Inc.
> Our Client    :    Tracy and Patrick Gogliardo
> Our File No.    :    244050.00

Dear Mr. Merriweather:

This letter is to follow up on my letter to you of March 15, 2024 following up on the conversation when we discussed Ms. Gogliardo's health and her needs for accommodations.

During our conversation, you indicated that the Association would accommodate my client's needs in the future by simply conducting Board Meetings or annual meetings in front of my client's home so that she could go and use her bathroom if it was necessary.

May I suggest to you that that is not the most reasonable means available to accommodate my client's disability as it exposures her to ridicule and singles her out as her having to go up to her house to use the bathroom would be obvious to everyone attending the meeting as using a porta-john would. Let me suggest to you and your client how they could conduct their meetings at any of the City of Lakeland fire departments which all have meeting rooms which are accessible to the general public. In fact, sheriff's offices/auxiliary offices also have meeting rooms that are available to citizens of Lakeland at no charge. Finally, your client could also conduct their meetings at local churches which typically charge either nominal fees or no fees at all for use of their facilities.

While your client is pondering that, I am still waiting to receive a response to my client's further request for an accommodation by allowing her to keep and maintain on her property a van or small RV with bathroom facilities designed to accommodate her needs to have a self-contained bathroom when she has to travel.

Mr. Nicholas P. Merriweather, Esquire
May 17, 2024
Page 2

It has been more than a month since I made this request to the Association through your office at which time I also supplied you with a doctor's report confirming the fact that my client would benefit from self-contained vehicles due to the fact that she suffers from disability and incontinence.

Yet, despite my request, as of the date of this letter, I have not received confirmation that the Association will agree to my client's request for accommodation. As such, please be advised that unless I receive an affirmative response within the next ten (10) days, I will have no option but to conclude that the Association has rejected my client's request for a reasonable accommodation to address her disability and will proceed forward with immediately filing a complaint with the Department of Housing and Urban Development as well as a complaint with the Florida Commission on Human Relations.

As such, your prompt and immediate attention to this matter is required.

Sincerely yours,

Daniel F. Pilka

DFP/lml
cc:      Client

# EXHIBIT "D"



# EXHIBIT "E"

INSTR # 2020081194
BK 11209 Pgs 0828-0831 PG(s)4
04/17/2020 09:37:44 AM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 35.50

Prepared by and
when recorded return to:
Nicholas P. Merriweather, Esq.
The Sanoba Law Firm
422 South Florida Avenue
Lakeland, FL 33801

## CERTIFICATE OF AMENDMENT TO
## DECLARATION OF COVENANTS, RESTRICTIONS, LIMITATIONS AND
## CONDITIONS FOR PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC.

1.      On the 28th day of March, 2020, the Parkside South Property Owners Association, Inc. (the "Association"), held a Special Meeting of its Members.

2.      The Special Meeting, duly noticed in accordance with the existing governing documents of the Association and Florida Statutes, was held for the purpose of amending the Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South, as recorded at Official Records Book 2984, Page 1795, in the Public Records of Polk County, Florida (hereafter "Declaration").

3.      In accordance with the requirements of the applicable Florida Statutes and the governing documents, the amendment to Section 3, Paragraph O of the Declaration for Parkside South subdivision, attached hereto as **Exhibit A**, was duly adopted by the membership, by the affirmative vote of not less than two-thirds (2/3rds) of the voting interests of the Association. Within 30 days after recording this Declaration Amendment, the Association shall provide copies of the amendment to its members. In lieu of providing copies of the amendment, the Association may provide notice to the members that the amendment was adopted, identifying the official book and page number or instrument number of the recorded amendment and that a copy of the amendment is available at no charge to the member upon written request to the association.

4.      The Declaration Amendment shall be known as the "*Amendment to Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South Subdivision*" and is being recorded contemporaneously with this Certificate of Amendment.

IN WITNESS WHEREOF, the undersigned has caused this Amendment to Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South to be executed the date set forth below

Signed in the presence of:

Witness
Print Name: _Melissa Reynolds_

Witness
Print Name: _Teresa Justice_

Parkside South Property Owners Association, Inc.

By Daniel K. Peter, as President

Date: _4/16/2020_

Page 1 of 2

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was acknowledged before me this 16ᵗʰ day of ___April___,
2020 by Daniel K. Peter, as President of the Parkside South Property Owners Association, Inc.,
who ☐ is personally known to me or ☒ who has produced Florida Driver's License, or ☐ who
has produced a _____ Driver's License, or ☐ who has produced _____
as identification, by means of ☒ physical presence or ☐ online notarization.

*(Notary seal)*

Notary Public State of Florida
Jenis I. Cadiz
My Commission GG 105564
Expires 05/25/2021

*Notary Public in and for State of Florida*
*Printed name:* __Jens Cadiz__
*My Commission expires:* __05-25-2021__
*My Commission No.:* __108564__

Page 2 of 2

### AMENDMENT TO DECLARATION OF COVENANTS, RESTRICTIONS, LIMITATIONS AND CONDITIONS FOR PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC.

WHEREAS, pursuant to a duly adopted resolution of the Board of Directors of the Parkside South Property Owners Association, Inc. (the "Association"), the following revisions to the Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South, as recorded at Official Records Book 2984, Page 1795, in the Public Records of Polk County, Florida (hereafter "Declaration"), to modify vehicular parking restrictions within the subdivision, were proposed to the Owners of the Association; and

WHEREAS, Section 6, subsection B of the Declaration provides a process for amendment to the Declaration by the Owners of the Association; and

WHEREAS, not less than two-thirds (2/3rds) of the Owners approved the changes to the Declaration set forth herein pursuant to amendment process provided for in Section 6(B) of the Declaration.

WHEREAS, this revision to the Declaration shall apply to all Owners who consented to this amendment, by vote or continued residency, and also to all Owners who acquire title to their residence after the effective date of the amendment, which shall be deemed the date this Amendment to the Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South is duly recorded in the Official Records of Polk County, Florida.

NOW WHEREFORE, the Declaration is hereby amended as follows (Substantial rewording. See governing documents for current text):

### Section 3: USE RESTRICTIONS, CONDITIONS AND COVENANTS

O.      Boats, boat trailers, mobile homes, house trailers, travel trailers, camper vehicles, motor homes, golf carts, trucks (such terms shall not include pick-up trucks, sport utility vehicles, vans or minivans) and commercial vehicles shall not be permitted to remain in the Subdivision overnight; except that boats or boat trailers, travel trailers, motor homes, camper vehicles, golf carts and commercial vehicles are permitted to remain on a Lot when (a) parked in an enclosed garage, or (b) parked on a driveway to a Lot on a temporary basis, not exceeding three (3) days, or (c) parked on a Lot behind a fence, six (6) feet in height or higher, so such boat, boat trailer, mobile home, house trailer, travel trailer, camper vehicle, motor home, golf cart or truck is not wholly visible from the street and does not detract from the neighborhood or the Subdivision. Except for inoperative vehicles that are parked in an enclosed garage, all vehicles shall have a current license tag registration and shall be in an operating condition. No personal or commercial vehicle may be parked on the lawn or grass of a Lot overnight. All motor vehicles, cycles, and other engine-run apparatus located and/or run within the subdivision by a lot owner, their guest and/or invitees, will carry legal sound control devices as prescribed by the manufacturer.



IN WITNESS WHEREOF, the undersigned has caused this Amendment to Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South to be executed the date set forth below.

Signed in the presence of:

Parkside South Property Owners Association, Inc.

_Melissa Reynolds_

_Daniel K. Peter_

Witness

By Daniel K. Peter, as President

Print Name: _Melissa Reynolds_

_Teresa Justice_

Date: _4/16/2020_

Witness

Print Name: _Teresa Justice_

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was acknowledged before me this _16th_ day of _April_, 2020 by Daniel K. Peter, as President of the Parkside South Property Owners Association, Inc., who ☐ is personally known to me or ☒ who has produced Florida Driver's License, or ☐ who has produced a _____ Driver's License, or ☐ who has produced _____ as identification, by means of ☒ physical presence or ☐ online notarization.

_(Notary seal)_

_____
Notary Public in and for State of Florida
Printed name: _Jens Cadiz_
My Commission expires: _05-25-2021_
My Commission No.: _108564_

Notary Public State of Florida
Jens L Cadiz
My Commission GG 108564
Expires 05/25/2021

# EXHIBIT "F"



# EXHIBIT "G"

Parkside South Property
Owners Association, Inc.
P.O. Box 736
Highland City FL 33846

**August 6, 2024**

**Via Certified Mail**

Tracy Gogliardo
4941 Tradition Drive
Lakeland, FL 33812-3156

**Notice of Violation**

This letter is to notify you that the camper vehicle or motorhome that has been parked continuously in your driveway since approximately July 10, 2024 is in violation of the enclosed Parkside South Property Owners Association, Inc. (POA) Declaration of Covenants, Restrictions, Limitations and Conditions and needs to be relocated.

Consequently, this is a courtesy written notice that if the referenced vehicle is not removed from in front of your property by August 20, 2024, the POA will take the appropriate action to enforce the covenants, restrictions, limitations and conditions of the Declaration, which will include but may not be limited to fines per the POA's Policy for Fining and Suspension.

Sincerely,

Dan Peter
President
Parkside South Property Owners Association, Inc.

cc: John McNeil – Vice President
   John Peavy – Secretary/Treasurer

Enclosure

## AMENDMENT TO DECLARATION OF COVENANTS, RESTRICTIONS, LIMITATIONS AND CONDITIONS FOR PARKSIDE SOUTH PROPERTY OWNERS ASSOCIATION, INC.

WHEREAS, pursuant to a duly adopted resolution of the Board of Directors of the Parkside South Property Owners Association, Inc. (the "Association"), the following revisions to the Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South, as recorded at Official Records Book 2984, Page 1795, in the Public Records of Polk County, Florida (hereafter "Declaration"), to modify vehicular parking restrictions within the subdivision, were proposed to the Owners of the Association; and

WHEREAS, Section 6, subsection B of the Declaration provides a process for amendment to the Declaration by the Owners of the Association; and

WHEREAS, not less than two-thirds (2/3rds) of the Owners approved the changes to the Declaration set forth herein pursuant to amendment process provided for in Section 6(B) of the Declaration.

WHEREAS, this revision to the Declaration shall apply to all Owners who consented to this amendment, by vote or continued residency, and also to all Owners who acquire title to their residence after the effective date of the amendment, which shall be deemed the date this Amendment to the Declaration of Covenants, Restrictions, Limitations and Conditions for Parkside South is duly recorded in the Official Records of Polk County, Florida.

NOW WHEREFORE, the Declaration is hereby amended as follows (Substantial rewording. See governing documents for current text):

### Section 3: USE RESTRICTIONS, CONDITIONS AND COVENANTS

O.      Boats, boat trailers, mobile homes, house trailers, travel trailers, camper vehicles, motor homes, golf carts, trucks (such terms shall not include pick-up trucks, sport utility vehicles, vans or minivans) and commercial vehicles shall not be permitted to remain in the Subdivision overnight; except that boats or boat trailers, travel trailers, motor homes, camper vehicles, golf carts and commercial vehicles are permitted to remain on a Lot when (a) parked in an enclosed garage, or (b) parked on a driveway to a Lot on a temporary basis, not exceeding three (3) days, or (c) parked on a Lot behind a fence, six (6) feet in height or higher, so such boat, boat trailer, mobile home, house trailer, travel trailer, camper vehicle, motor home, golf cart or truck is not wholly visible from the street and does not detract from the neighborhood or the Subdivision. Except for inoperative vehicles that are parked in an enclosed garage, all vehicles shall have a current license tag registration and shall be in an operating condition. No personal or commercial vehicle may be parked on the lawn or grass of a Lot overnight. All motor vehicles, cycles, and other engine-run apparatus located and/or run within the subdivision by a lot owner, their guest and/or invitees, will carry legal sound control devices as prescribed by the manufacturer.



Stacy M. Butterfield  POLK
CFN# 2020081194 OR BK 11209  PG 830 Pgs 0828-0831 04/17/2020 09:37:44 AM

P.O. Box 736
Highland City, FL 33846

TRACY GOGLIARDO
4941 TRADITION DR
LAKELAND, FL 33812-3156

33812-315741

CERTIFIED MAIL

9589 0710 5270 2091 4821 37

UNITED STATES
POSTAL SERVICE

Retail

RDC 99

33812

U.S. POSTAGE PAID
FCM LETTER
LAKELAND, FL 33810
AUG 06, 2024

$9.68

S2324M502565-99

RCVD
8-8-24

# EXHIBIT "H"





# EXHIBIT "I"

UPDATE - GOGLIARDO

From: Tracy Gogliardo (kwiatkennelsab@aol.com)
To:     lisa.sutherland2@fchr.myflorida.com
Date: Thursday, September 5, 2024 at 01:36 PM EDT

Dear Lisa,

I am writing to you today with an unfortunate circumstance.

My husband drove me to the grocery store, Winn Dixie an hour ago. 12:40pm
Lakeland Highlands Blvd. location.
I had to immediately visit the restroom upon my arrival.
We met up again near the deli area, only to overhear the Secretary of our HOA  - John Peavy talking about me.
He was speaking to a man very loudly.
Stating :
"We have this lady named Tracy who we all want to leave, ya know, move. Maybe just die. Everyone on our street gets along. Just hate her."
When I heard this, I turned the corner and asked Mr. Peavy to stop talking about me in public.
His response - he pointed at me and stated :
"This is my Karen. Cunt Karen."

Patrick and I were not surprised at his behavior and proceeded to leave.

Unsure how much more public humiliation and abuse I can handle. Awful.

PS-
Dr. Saylor's office confirmed receipt of the document you faxed to them. Will fax back to you.

I would like to pursue the harassment portion of my case for certain.

Warmly,
Tracy Gogliardo